Eastern District of Kentucky
**FILED**
JAN 13 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CIVIL CASE NO. 05-483-KKC

KENNETH BELCHER,                        PETITIONER

VS.          **REPORT AND RECOMMENDATION**

STEVE HANEY, WARDEN,                 RESPONDENT

*******

       This matter is before the Court upon the renewed "Petition for Writ of Habeas Corpus" (DE#1) pursuant to 28 U.S.C. §2254 by the pro se prisoner Kenneth Belcher. Having considered the entire record, including the Petition and Memorandum (DE#1), Answer (DE#5), Motion for Summary Judgment (DE#6), Memorandum in Support (DE#7), Appendix with Rule 5 Attachments (DE#8), and the Response to the Motion for Summary Judgment (DE#10), the Magistrate Judge makes the following proposed findings of fact and conclusions of law:

## I. Findings of Fact

       On the evening of November 17, 2000, Anthony Carter and Kenny Wyatt went to the trailer of Kenneth Belcher to buy some marijuana from him. Carter went in alone to buy the marijuana but did not have enough money. Belcher insisted on a cash-only transaction. When Wyatt came to the door, Belcher's friend, Jimmy Coldiron, told him he could not come in. After Coldiron put his hand on Wyatt's shoulder, the two men "bickered" in the yard. Belcher told Carter and Wyatt to leave. The stories differ after this point, but it undisputed that Belcher fired his 12 gauge shotgun repeatedly at both men as they were leaving in their vehicle. Coldiron admitted that he then shot at them as well, using a 9 mm pistol that Belcher gave him. After the shooting, Belcher hid his guns and fled.

       Although he was wounded, Carter managed to call "911" and drive the other victim, Wyatt, to the hospital where Wyatt died of multiple gunshot wounds shortly thereafter. In response to a report that two gunshot victims were being treated at Pineville Community Hospital, KSP Detective Mitchell Williams went there at approximately 7:00 p.m. He was informed that Wyatt had already died

and that Carter was in the emergency room. Carter gave a statement to Det. Williams, and the hands of both Carter and Wyatt were tested for evidence of gunshot residue (none was found).

Det. Williams instructed KSP Troopers Ryan Sizemore and Barry Knuckles to secure the scene of the shooting. Sgt. David Banks soon joined these two officers at the scene of the shootings, followed by Det. Williams. The residence was surrounded by a chainlink fence with a locked front gate. As the officers walked outside the fence towards the back gate, they swung wide due to a marshy area they thought might be sewage. In the woods, they observed a doghouse with firearms visible inside, specifically two assault rifles, a 12-gauge shotgun, and a bag of ammunition. As the officers continued toward the back gate, they saw two 9 mm handguns lying on the ground in the woods, next to a plastic bag. The bag contained a third 9 mm handgun and some ammunition. All of the firearms were found outside of the fenced yard of Belcher's trailer. The officers then went to the back door of the trailer and knocked. No one answered. Given that they knew two men had been shot there that evening, they entered in order to ascertain whether anyone else was inside and in need of medical care. Finding no one present, the officers then left.

On the morning of November 19, 2000, officers arrested Belcher and advised him of his *Miranda* rights. Belcher then gave a statement to Det. Williams. Belcher claimed that after he told Carter to leave, Carter and Wyatt threatened him, hit his friends' van with their own vehicle, jumped out and beat on his friends' van, and fired shots at him and his friends (Jimmy Coldiron, Phyllis Mitchell, and her two sons). Belcher admitted that he had fired multiple shots at Wyatt and Carter with his 12-gauge shotgun. He further admitted that Coldiron had also shot at Wyatt and Carter several times with one of Belcher's 9 mm pistols. Belcher indicated that he then gathered the weapons, hid them away from his trailer, and fled.

A few days later, Det. Williams and defense counsel visited the scene of the shooting during the daytime. They observed four shotgun hulls next to the front porch of the trailer. These hulls had not been observed during the initial night-time trip to the scene. At defense counsel's request, Det. Williams removed several bullets lodged in the trailer for analysis. Det. Williams also photographed the victims' vehicle, which had several bullet holes or marks.

Belcher was indicted for murder and assault. His jury trial in the Bell County Circuit Court commenced on March 14, 2001, and concluded on March 20, 2001. On the first day of trial, defense counsel moved to suppress the evidence

of the guns and ammunition, claiming that the police officers had found the guns during an unconstitutional search of the "curtilage" of Belcher's trailer. At the hearing, Sgt. Banks and Det. Williams indicated that the officers had responded to a reported gunfight and that, while walking outside the fenced premises, had discovered several guns lying on the ground in the open and had observed several more firearms inside a doghouse. All these items were observed outside the fence enclosing Belcher's premises. The trial court denied the motion to suppress, as well as a defense motion to exclude photographs of the firearms.

At trial, Carter testified that Belcher had previously sold him marijuana and that he had gone to Belcher's trailer to buy some more. He testified that he went inside the trailer alone to make the deal, while Wyatt stayed outside. However, he was ten dollars short of the purchase price. Carter testified that when Wyatt came to the door, Coldiron would not let Wyatt in. Carter testified that when they were leaving, he heard several shots. He and Wyatt fled, but were hit multiple times with shotgun blasts. He testified that he accidently backed his vehicle into the van while hurriedly trying to escape the gunfire. Carter testified that he and Wyatt were not armed with any firearms.

Belcher testified on his own behalf and claimed "self-defense". He claimed that Carter and Wyatt had deliberately hit the van, and then emerged from their vehicle with guns shooting at him first. However, the evidence showed that Carter and Wyatt had no gunshot residue on their hands. Moreover, the police found no guns in the victims' vehicle or in their possession. The only shell casings found at the scene were determined to be from Belcher's firearms. Belcher admitted that he fired his shotgun at Carter and Wyatt at least four times and that he had given Coldiron a 9mm handgun to shoot. Coldiron admitted that he fired it after Belcher began shooting. With respect to the bullet holes in the trailer, expert testimony at trial indicated that the direction of the shots and the age of the marks showed that they were not made during the incident at issue. Although Belcher's mother testified for him, the evidence reflected that the view from her trailer was obstructed by pine trees.

The jury rejected Belcher's self-defense theory and found him guilty of wanton murder. On April 25, 2001, the trial court sentenced him to twenty years in prison. He appealed on two grounds: 1) the trial court should have suppressed the evidence because the officers had unconstitutionally searched the "curtilage" of his residence, and 2) the photographs of the firearms should not have been admitted into evidence. Both issues were preserved for review. The Kentucky Supreme Court affirmed the conviction and sentence in an unreported decision

rendered on May 20, 2004. See *Belcher v. Commonwealth*, 2004 WL 1123865 (Ky. 2004).[1] Approximately one month later, on or about June 30, 2004, Belcher filed a federal petition for habeas corpus. However, he subsequently requested voluntary dismissal in order to return to state court to exhaust claims of "ineffective assistance of trial counsel" that he had never presented to the state courts. This Court granted his request, and the initial federal petition was dismissed without prejudice on October 19, 2004. See London Case #04-cv-299.

On March 11, 2005, Belcher returned to state court and filed a motion pursuant to RCr 11.42, which the trial court denied on April 27, 2005. Belcher appealed, and such matter is still pending. On or about September 6, 2005, Belcher refiled his federal habeas petition, reasserting the same two claims from his direct appeal that he had asserted in his initial federal petition. He indicates in his response (DE#10, p. 1) that he "does not anticipate bringing" his ineffectiveness claims on federal habeas review.

## II. Issues Presented

The threshold issues are whether the present petition is successive and whether it is reviewable at this time, given that state appellate review of the denial of Belcher's 11.42 motion is still pending. On the merits, petitioner alleges 1) that "unconstitutional search and seizure evidence [was] used to convict" him, and 2) that the trial court should not have admitted photographs of his guns found together at the scene, thus allegedly depriving him of a fair trial.

## III. Conclusions of Law

### Statutory Jurisdiction

Pursuant to 28 U.S.C. §2254(a), "... a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. The statute requires that the petitioner "be 'in custody' when the application for habeas corpus is filed". *Carafas v. Lavelle*, 391 U.S. 234, 237 (1968); and see, *Spencer v. Kemna*,

---

[1] A copy of the decision of the Kentucky Supreme Court can be found in the record of the initial petition, London Civil Case No. 04-299, at DE#11, p. 86-95.

523 U.S. 1, 118 S.Ct. 978, 982 (1998). At the time Belcher filed his initial federal petition, he was incarcerated under the challenged murder conviction at Luther Luckett Institute in Kentucky. At the time he filed his renewed petition, he was incarcerated in state custody at the Eastern Kentucky Correctional Complex in West Liberty, Kentucky. See DE#1, Mem. p. 28.

## Applicability of AEDPA

The present habeas petition was filed subsequent to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the AEDPA fully applies to this petition. *Williams v. Taylor*, 120 S.Ct. 1495, 1518 (2000); *Penry v. Johnson*, 532 U.S. 782, 121 S.Ct. 1910, 1918 (2001).

## Successiveness

Initial review of a federal habeas petition requires this Court to determine whether a federal petition is "successive". See 28 U.S.C. §2244(a); *In re Sims*, 111 F.3d 45 (6th Cir. 1997)(per curiam). After Belcher filed his initial federal petition, he indicated he wanted to pursue some unexhausted claims in state court. His petition was dismissed without prejudice in order for him to do so, and his claims were not considered on the merits by this Court. Given that Belcher's initial petition was dismissed without prejudice for lack of exhaustion, his renewed petition should not be deemed "successive". See *Carlson v. Pitcher*, 137 F.3d 416, 420 (6th Cir. 1998)("We join with every other court to consider the question, and hold that a habeas petition filed after a previous petition has been dismissed on exhaustion grounds is not a 'second or successive' petition").

In *Slack v. McDaniel*, 529 U.S. 473, 488, 120 S.Ct. 1595, 1606, 146 L.Ed.2d 542 (2000), the United States Supreme Court specifically cited *Carlson* with approval, observing that: "Our view that established practice demonstrates that Slack's 1995 petition is not second or successive is confirmed as well by opinions of the Courts of Appeals which have addressed the point under similar circumstances". Hence, Belcher's renewed petition is not "successive".

## AEDPA One-Year Period of Limitations

Amended 28 U.S.C. §2244(d)(1) provides that "a 1-year period of limitations shall apply to an application for a writ of habeas corpus... [t]he limitation period

shall run from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." or several other dates not applicable here. The AEDPA period of limitations is tolled during the time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. §2244(d)(2).

The Kentucky Supreme Court affirmed Belcher's conviction on May 20, 2004, and he had ninety days to file for certiorari. See *Bronough v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000). He filed his RCr 11.42 motion less than one year later on March 11, 2005.[2] State appellate review of his 11.42 motion is still pending, and the time from March 11, 2005 until the conclusion of post-conviction review would be statutorily tolled.[3] Belcher refiled his federal petition on or about September 6, 2000, within the one-year period of limitations. The Commonwealth acknowledges that the refiled federal petition is timely. See DE#7, p. 10. n.1.

**Exhaustion, Pending 11.42 Appeal on Non-Habeas Issues**

Pursuant to 28 U.S.C. §2254(b)(1-2), a district court may not grant habeas relief to a prisoner unless available state remedies have been exhausted, but notwithstanding failure to exhaust, a court may deny a petition on the merits. To satisfy the exhaustion requirement, a state prisoner must complete any appeals through the *highest* level of the state courts before seeking federal habeas relief. *Rogers v. Howes*, 144 F.3d 990 (6th Cir. 1998); *Hafley v. Sowders*, 902 F.2d 480, 485 (6th Cir. 1990); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). The defendant must "fairly present the substance of each of his federal constitutional claims to the state courts" before raising such claim on habeas. *Carter v. Bell*, 218 F.3d 581 (6th Cir. 2000); *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995).

---

[2]The time during which Belcher's initial federal petition was pending does not toll the AEDPA one-year period of limitations. *Duncan v. Walker*, 121 S.Ct. 2120 (2001)(holding that when a prisoner's initial federal petition is dismissed without prejudice, the time during its pendency does not toll the one-year period of limitations).

[3]Previously, Sixth Circuit case law held that a state post-conviction proceeding does not toll the AEDPA one year period of limitations unless it raises federal constitutional claims that are then reasserted in the federal habeas petition. See <u>Austin v. Mitchell</u>, 200 F.3d 391 (6th Cir.1999). However, the Sixth Circuit Court of Appeals expressly overruled *Austin* in <u>Cowherd v. Million</u>, 380 F.3d 909, 914 (6th Cir. 2004), holding that even a "state collateral proceeding based solely on state-law issues" still tolls the period of limitations.

On direct appeal to the Kentucky Supreme Court, petitioner argued the same two issues he now reasserts on habeas. He argued his search and seizure issue as a matter of Fourth Amendment law, citing various United States Supreme Court cases. With respect to his second claim, i.e. that the admission of certain evidence deprived him of a "fair trial", the Kentucky Supreme Court fully considered and rejected such claim, albeit as a matter of state law. Both issues are exhausted for purposes of federal habeas review.

Although the petitioner has previously indicated that he wanted to preserve his claims of "ineffective trial counsel" for federal habeas review, he now indicates that he is abandoning such claims on federal habeas review and does not wish to assert them here. As Belcher is not asserting any unexhausted claims here, his refiled petition is not "mixed". See Pliler v. Ford, 542 U.S. 225, 124 S.Ct. 2441, 159 L.Ed.2d 338(2004)(holding that district courts must generally dismiss "mixed" petitions).

On the other hand, the record reflects that Belcher's ineffectiveness claims are still pending on state appellate review. Ordinarily, piecemeal litigation is disapproved, and a federal habeas petition will generally not be considered during the pendency of a direct appeal or other state proceedings designed to correct constitutional errors. As the United States Supreme Court explained in *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991), "the States should have the first opportunity to address and correct alleged violations of a state prisoner's federal rights." See *also, Lambrix v. Singletary*, 520 U.S. 518, 523, 117 S.Ct. 1517, 1522-23, 137 L.Ed.2d 771 (1997)(emphasizing that the states' interest in correcting their own mistakes should be "respected in all federal habeas cases").

However, in Belcher's case, the pending state post-conviction review does not concern any issues asserted in this federal habeas proceeding. Petitioner has indicated he is not asserting any "ineffectiveness" claims on federal habeas. Although state post-conviction review could affect Belcher's conviction, there is no chance of inconsistent rulings on specific issues, given that entirely different issues are raised in the respective proceedings. Although this situation is rather unusual, the Magistrate Judge will assume that this court may proceed further at this time. Alternatively, the District Court may hold this petition in abeyance until state post-conviction review concludes.

**Standard for Habeas Review**

Federal habeas review is governed by the standard set forth in the AEDPA:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

The United States Supreme Court has explained that a state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). In *Williams*, the Supreme Court explained that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The United States Supreme Court observed in *Bell v. Cone*, 122 S.Ct. 1843, 1850-51 (2002) that the focus of inquiry under the "unreasonable application" prong is whether the state court's application of clearly established federal law was "objectively unreasonable". See also, *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004)("the Supreme Court has found it necessary within the past year to reiterate that when a state court's application of governing federal law is challenged in a habeas petition, the decision must not only be shown to be erroneous, but objectively *unreasonable*")(emphasis in original), citing *Middleton v. McNeil*, 124 S.Ct. 1830 (2004) and *Yarborough v. Gentry*, 540 U.S. 1 (2003).

The AEDPA further provides in 28 U.S.C. §2254(e)(1) that:

> "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."

**Issue 1: Whether the State Court's Decision Not to Suppress Evidence Found Outside the Petitioner's Fenced Yard was "Contrary to or an Unreasonable Application of Clearly Established Supreme Court Precedent" or "Resulted in a Decision That was Based on an Unreasonable Determination of the Facts in Light of the Evidence Presented in the State Court Proceeding"**

In his own words, Belcher alleges that the "guns and ammunition was seized from area beyond crime scene without a search warrant over (5) five hours after incident". DE#1, p. 5. In his habeas memorandum, he complains that the Kentucky Supreme Court should not have affirmed the trial court's denial of his motion to suppress. DE#1, Mem. p. 5-6. However, Belcher ignores the relevant AEDPA standard for the limited scope of habeas review and merely reargues his direct appeal issues. In fact, much of his lengthy memorandum is taken verbatim from his state appellate brief. However, it is not this Court's function to serve as a state appellate court. Review on habeas is limited to whether the state court decision was "contrary to or an unreasonable application of clearly established Supreme Court precedent" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

In denying Belcher's motion to suppress, the trial court found that Belcher lacked "standing" to contest the seizure of the items found outside his fenced yard. This is common parlance meaning that Belcher had no assertable privacy interest where the guns were found. A defendant challenging a search bears the burden of showing a legitimate privacy interest in the place in question. *Rakas v. Illinois*, 439 U.S. 128, 130, n.1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Katz*, 389 U.S. 347, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); and see, *United States v. Pino*, 855 F.2d 357, 360 (6th Cir. 1988). Belcher did not do so.

On direct appeal, he argued that the evidence of firearms and ammunition should have been suppressed because the officers had unconstitutionally searched his "curtilage". The area immediately surrounding a residence, the "curtilage", is considered an extension of the residence for purposes of determining the proper scope of a search under the Fourth Amendment. *Dow Chemical Co. v. United States*, 476 U.S. 227, 235, 106 S.Ct. 1819, 1825 (1986). Belcher cited *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), where the

United States Supreme Court discussed various factors to consider in determining curtilage, including 1) the proximity of the area claimed to be curtilage to the home, 2) whether the area is included within an enclosure surrounding the home, 3) the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation.

The Kentucky Supreme Court concluded that: "After a careful review of Dunn, supra, and comparing the factors therein to the facts of this case, we disagree [with Belcher]." *Belcher v. Commonwealth*, 2004 WL 1123865 at *2. The Kentucky Supreme Court pointed out that the "doghouse was 30 yards (90 feet) away from Belcher's home and outside of a tall chain link fence." *Id*. The Kentucky Supreme Court further noted that the *Dunn* decision had similarly declined to find that a structure located outside of a fenced area was part of the curtilage. The Kentucky Supreme Court held that:

> "[A] doghouse that has no door, an open front, is far from the home, and located outside of a fence is not within the curtilage. Therefore, those areas outside of the fence where the pistols were found were in this same open field." *Belcher*, 2004 WL 1123865, at *2.

The Kentucky Supreme Court observed that Belcher himself had testified that he had hidden the guns away from his home so that the police would not find them and take them away. *Id*. at *3. The Kentucky Supreme Court held that "[i]n this attempt to 'stash' the guns, he abandoned them to an area not protected by the Fourth Amendment." *Id*. Belcher has not shown any way in which the Kentucky Supreme Court's decision conflicted with *Dunn* or any other Supreme Court decisions. He simply dislikes the result in his own case.

Although Belcher cites *Rakas* and *Katz* in his habeas petition, such cases simply stand for the proposition that a defendant who moves to suppress evidence must show (1) that he has an expectation of privacy in the searched premises, and (2) that society is prepared to recognize that expectation as legitimate. *Rakas*, 439 U.S. at 130 n. 1, 99 S.Ct. 421. The Kentucky Supreme Court found that Belcher had not shown any legitimate expectation of privacy in an open area outside his fenced yard. Belcher has not shown that this decision conflicted with any Supreme Court precedent. See, e.g., *Oliver v. United States*, 466 U.S. 170, 171, 104 S.Ct. 1735 (1984)(holding that Fourth Amendment protection does "not extend to open fields" and that no expectation of privacy legitimately attaches to such places); *Dow*, 476 U.S. at 235, 106 S.Ct. at 1825 (same).

The facts in the record support the state court's holding, and Belcher has not produced any facts that would overcome the presumption of correctness for any factual findings. The Kentucky Supreme Court aptly pointed out that petitioner's backyard was enclosed by a chain link fence and that the officers had found the guns outside the fence in the woods nearby. The police observed the firearms laying on the ground and in the doghouse in plain view in an area outside the curtilage of Belcher's trailer. The fact that the police subsequently went to Belcher's back door, knocked, and entered, is irrelevant to their earlier observation of the firearms in the open area outside the fenced yard. Regardless of whether the trailer was lawfully searched under an exception to the warrant requirement, the officers' prior discovery of the guns outside the fenced yard did not violate the Fourth Amendment. The state court decision that the petitioner had no "standing" (i.e. no legitimate expectation of privacy in "open fields" outside the curtilage), and the Kentucky Supreme Court's affirmance, are fully consistent with the United States Supreme Court precedent cited by petitioner, including *Dunn, Rakas, Oliver, Dow, and Katz*.

None of the United States Supreme Court cases cited by petitioner in his habeas petition provides a basis for habeas relief, and in fact, many of them are not even relevant to the actual issue asserted here. For example, although Belcher also cites *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Kentucky Supreme Court pointed out that the facts of Belcher's case did not require suppression under such precedent, specifically explaining that:

> "Belcher argues that the police were improperly located in this area and tries to extend the 'plain view' doctrine of *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), to suggest that the officers saw the guns because police had a 'warrantless presence'. This analysis has no bearing here because the police were free to go around the fence line to find a way to the front door of the trailer to see if anyone was home or injured. Seeing the contents of the doghouse was easily accomplished while standing in the open field. Therefore, they did not require an unlawful vantage point to notice the guns, nor did they require a warrant to knock on the front door." *Belcher,* 2004 WL 1123865 at *3.

The Kentucky Supreme Court also distinguished another Supreme Court case cited by Belcher, explaining that:

"Belcher uses *Flippo v. West Virginia,* 529 U.S. 11, 120 S.Ct. 7, 145 L.Ed.2d (1999), to support his argument that the police investigation may not invoke a 'crime scene exception' to the warrant requirement. The police in *Flippo* entered a cabin rented by the defendant, opened a closed container therein finding an envelope which they opened and therein evidence. Our case has no similarity because the police did not seize evidence from inside a locked container within Belcher's home. Rather, they found these items." *Belcher,* 2004 WL 1123865 at *3.

Petitioner cites several more Supreme Court cases, including *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), *Coolidge v. New Hampshire,* 91 S.Ct. 2022, and *Terry v. Ohio,* 88 S.Ct. 1868, respectively for the general propositions that police may "respond to emergency situations", "seize any evidence that is in plain view during the course of their legitimate emergency activities", and that "a warrantless search must be strictly circumscribed by the exigencies which justify its initiation." DE#1, Mem. p.11-12. Such propositions, even if correct, are not pertinent here. The officers in Belcher's case did not need any "exigent circumstances" to lawfully observe items left on the ground in "open fields". The Kentucky Supreme Court succinctly observed that "the area in question was not protected from warrantless searches". *Belcher,* 2004 WL 1123865 at *3.

Belcher has not shown that the state court decision to deny suppression of the evidence found on the ground outside his fenced yard conflicted with any relevant Supreme Court decisions or that the Kentucky Supreme Court "unreasonably applied" any such precedent. In light of the evidence presented in the state proceedings, Belcher has also not shown that the state decision involved an "unreasonable determination of the facts". Under the amended provisions of 28 U.S.C. § 2254(e)(1), "[p]rimary or historical facts found by state courts are 'presumed correct and are rebuttable only by clear and convincing evidence'." *Lancaster v. Adams,* 324 F.3d 423, 429 (6th Cir. 2003). Petitioner has not rebutted any facts upon which the state court's legal determination was made. Det. Williams testified that all six firearms were found *outside* the trailer's fenced area. Several were found lying in the open on the ground, and several more were visible inside a large open doghouse. To the extent that another gun was found inside a bag, the evidence presented in state court indicated that such bag was found abandoned on the ground outside the fenced yard. A warrantless search and seizure of abandoned items does not violate the Fourth Amendment. See *Abel v.*

*United States,* 362 U.S. 217, 241 (1960); *United States v. V.L. Brown,* 208 F.3d 215, 2000 WL 302979, *3 (6th Cir. (Ky.)).

Although Belcher cites numerous Supreme Court cases for general points of search and seizure law, these cases do not support his contention that the officers in his case unlawfully searched his "curtilage" when they found the guns lying on the ground in the open and/or visible inside a doghouse. Both locations were outside his fenced yard. Belcher has not shown that the Kentucky Supreme Court unreasonably applied any United States Supreme Court precedent, nor has he shown that the state courts unreasonably determined the facts, given the evidence presented there.

**Issue 2: Whether the State Court's Decision Regarding Admission of the Gun Photographs was "Contrary to or an Unreasonable Application of Clearly Established Supreme Court Precedent" or "Resulted in a Decision That was Based on an Unreasonable Determination of the Facts in Light of the Evidence Presented in the State Court Proceeding"**

Petitioner's next argument is based on his disagreement with an evidentiary ruling by the trial court. However, it is well-settled that errors in the application of state law, especially with regard to the admission of evidence, are usually not cognizable in federal habeas proceedings, absent a constitutional violation. *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. ), *cert. denied,* 464 U.S. 951 (1983); *Kelly v. Withrow,* 25 F.3d 363, 370 (6th Cir.), *cert. denied,* 115 S.C.t 674 (1994). A violation of a state rule of evidence or procedure is not grounds for relief on federal habeas review unless the error was so egregious that it rendered the trial fundamentally unfair. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988)(the error must result in "the denial of fundamental fairness, thereby violating due process"); *Clemmons v. Sowders,* 34 F.3d 352, 357-358 (6th Cir. 1994), denial of habeas corpus affirmed by *Clemmons v. Sparkman,* 1996 WL 719873 (6th Cir.). The petitioner must establish a constitutional error that had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 113 S.Ct. 1710, 1722, reh'g. denied, 113 S.Ct. 2951 (1993).

In the present case, Belcher has not demonstrated any violation of a state rule of evidence, much less a constitutional error that rendered his trial fundamentally unfair or that had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 113 S.Ct. 1710, 1722,

*reh'g. denied*, 113 S.Ct. 2951 (1993). Petitioner simply reargues the same evidentiary issue rejected on direct appeal, where the Kentucky Supreme Court explained at length:

> "Belcher challenges the admission of certain photographs admitted into evidence that contained pictures of the guns as located by the police. He believes these images were unduly prejudicial and served no probative value because he conceded having shot Wyatt with a .12-gauge shotgun thereby leaving only his claim of having shot in self-defense as a matter of proof. He argues that the Commonwealth's pictures of the guns lying in the doghouse portrayed him as a 'crazed, fanatical killer'. After a careful review of the record, including review of these pictures, we disagree. Deciding to admit or exclude evidence under KRE 403 is a matter of trial court discretion. *Commonwealth v. English*, Ky., 993 S.W.2d 941 (1999) ..... Belcher points us to *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 707 (1967), to support his idea that admitting evidence of 'an arsenal of guns and ammunition that was not involved in the crime in the case at bar was not harmless error'. That case had numerous distinctions from this. There, the defendant's silence, coupled with the prosecutor's comments, meant to paint the defendant as drunk and ready to shoot the victim, created a situation that was unduly prejudicial beyond a reasonable doubt. Here, we are faced with photographs indicating the manner and location of the guns Belcher claimed to place. Although there was more than the murder weaponry found, these guns were found placed together as they appeared in the pictures. Even though some of the pictures displayed the guns spread out on the ground outside, the images do not rise to the level of representing an 'arsenal' nor are they irrelevant to the claim of self-defense. The pictures contain the shotgun and pistol, which were directly relevant to the case, and the location showing where they were placed indicates the nature of Belcher's flight after the incident. Such evidence of flight has long been considered proof of some sense of guilt. *See Rodriguez v. Commonwealth*, Ky., 107 S.W.3d 215 (2003), *citing Hord v. Commonwealth*, 227 Ky. 439, 13 S.W.2d 244, 246 (1928); *see also, e.g., Chumbler v. Commonwealth*, Ky., 905 S.W.2d 488, 496 (1995); *Hamblin v. Commonwealth*, Ky., 500 S.W.2d 73, 74 (1973). This inference from this evidence has direct bearing on the claim of self defense and is admissible. KRE 404(b)(1). There was no abuse of discretion in admitting the photos. Belcher received a fair trial. He was not denied any

due process under either the state or federal constitution."

On habeas review, a federal court may grant relief only if the petitioner shows that the state court's evidentiary ruling conflicted with a decision "reached by [the Supreme] Court on a question of law or if the state court [decided the evidentiary issue] differently than [the Supreme] Court on a set of materially indistinguishable facts." *Williams*, 120 S.Ct. at 1523; and see, *Sanders v. Freeman*, 221 F.3d 846, 851 (6th Cir. 2000). Belcher has not done so.

Although he cites *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 828 (1967), such case concerned the Fifth Amendment privilege against self-incrimination, repeated improper comments by the prosecution, and the application of the harmless error standard in case on a direct appeal. None of these issues pertain to Belcher's habeas case, and the Kentucky Supreme Court found *Chapman* readily distinguishable. Belcher has not shown how the state court's decision purportedly conflicted with *Chapman* nor does he does point to any other Supreme Court decisions.

Although Belcher repeats his state law claim that the gun photographs should not have been admitted because they were allegedly prejudicial, "unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis." *Robinson v. Runyon*, 149 F.3d 507, 515 (6th Cir. 1998), quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993); *Doe v. Claiborne County, Tennessee*, 103 F.3d 495, 515 (6th Cir. 1996); and see, *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996)("[e]vidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial").

The Kentucky Supreme Court aptly pointed out that the murder weapon was found with several other guns and was directly relevant to the case, that two of the guns were fired at the victims, that the photographs showing the location and placement of the various firearms were relevant to Belcher's flight and his claim of "self-protection", and that his characterization of six guns as an "arsenal" that made him look like a "fanatical killer" was exaggerated. The Kentucky Supreme Court found no abuse of discretion in the trial court's admission of the evidence under state law. Belcher's claim that his trial was rendered "unfair" is conclusory and is based on a matter of state law not cognizable on federal habeas review. No constitutional violation resulted, and harmless error analysis is not relevant here.

Petitioner has not shown that the Kentucky Supreme Court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Hence, the petitioner's allegations provide no basis for habeas relief.

## V. Certificate of Appealability ("COA")

The AEDPA provides that a COA should issue "only if the applicant has made a substantial showing of the denial of a constitutional right", 28 U.S.C. §2253(c)(2), and shall indicate which specific issues satisfy the "substantial showing" requirement, 28 U.S.C. §2253(c)(3); *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2002)(requiring an "individualized determination of each claim"); *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed2d 542 (2000). The Supreme Court has explained that to obtain a COA, "a prisoner must demonstrate that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Banks v. Dretke*, 124 S.Ct. 1256, 1280 (2004), citing *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

With respect to Issue #1, Belcher's argument is premised on his allegation that the firearms were found during a warrantless search of the "curtilage" of his trailer. However, the state courts held that the officers found the firearms *outside* the curtilage in an area where Belcher had no legitimate expectation of privacy. Petitioner's yard was enclosed by a chain link fence and a locked gate, and he acknowledges that the officers found all the firearms *outside* such fenced area. The guns were observed in several places, lying on the ground in the open or visible inside an open doghouse. Belcher had no legitimate expectation of privacy in such places. He even acknowledges that the guns were found "beyond the crime scene". DE#1, p. 5.

Belcher had no assertable privacy interest in open fields or in someone else's property. To the extent he hurriedly dropped some of the guns on the ground in the woods, a warrantless search and seizure of abandoned property does not violate the Fourth Amendment. *Abel v. United States*, 362 U.S. 217, 241 (1960); *United States v. V.L. Brown*, 208 F.3d 215, 2000 WL 302979, *3 (6th Cir. (Ky.)).

Belcher has not shown that the holding of the Kentucky Supreme Court conflicted with any United States Supreme Court precedent. The state court identified the correct legal principles and reasonably applied those principles to the facts of Belcher's case. Issue #1 is not even "debatable" and does not deserve further encouragement.

With respect to Issue #2, petitioner claims that evidence of photographs of the murder weapon stashed with several other guns was "prejudicial" and should not have been admitted at trial. However, he has not discussed, much less shown, how the decision of the Kentucky Supreme Court purportedly conflicted with any United States Supreme Court precedent. He has not shown any grounds for habeas relief. The Kentucky Supreme Court decided the issue as a matter of state law and held that the photographs were directly relevant in a variety of ways and not impermissibly prejudicial. At least two of the guns were fired at the victims, and such weapons were found with several other firearms that Belcher had hurriedly hidden together in the doghouse or dropped in the woods during his flight. The Kentucky Supreme Court found that Belcher's characterization of six guns as an "arsenal" was exaggerated.

Petitioner has not discussed any relevant Supreme Court precedent with respect to Issue #2. Although he fleetingly cites *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 828 (1967), such case concerned the Fifth Amendment right against self-incrimination and improper prosecutorial comments under a harmless error analysis on direct appeal. Nothing in *Chapman* provides any basis for habeas relief in Belcher's case. He has not shown that the Kentucky Supreme Court's decision was "contrary to or an unreasonable application of clearly established Supreme Court precedent" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

To the extent his allegations of evidentiary error are even cognizable here, Belcher has not shown that the admission of the photographs resulted in a constitutional violation that rendered his trial fundamentally unfair. Still, with respect to issuance of a COA, the record reflects that the state appellate decision on this evidentiary issue was not unanimous, and that the dissent believed a new trial was warranted. In light of the dissenting opinion, it is recommended that jurists of reason could conclude that it is at least *debatable* whether the petition states a valid claim of the denial of a constitutional right.

## RECOMMENDATION

To the extent the petition is reviewable at this time, it is **RECOMMENDED** that:

a) the "Petition for Writ of Habeas Corpus" (DE#1) by Kenneth Belcher should be **DENIED with prejudice**; and

b) the "Motion for Summary Judgment" (DE#6) by the respondent should be **GRANTED**; and

c) a certificate of appealability may be issued, limited to the issue of whether admission of the gun photographs was so prejudicial as to render petitioner's trial fundamentally unfair;

Alternatively, this Court may hold the petition in abeyance until final review of petitioner's 11.42 motion in state court has concluded.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir. 1991). A party may file a response to another party's objection within ten (10) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the 13th day of January, 2006.



Signed By:
J. B. Johnson, Jr.
United States Magistrate Judge